**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| TIMOTHY D. WILKINS, | ) | NO. 22-3608-SVW(E) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER DISMISSING COMPLAINT |
| | ) | |
| HOLCOLM, et al., | ) | WITH LEAVE TO AMEND |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

For the reasons discussed below, the Complaint is dismissed with leave to amend.  See 28 U.S.C. § 1915(e)(2)(B).

**BACKGROUND**

Plaintiff, a state prisoner confined at the California Men's Colony-East ("CMC-East"), filed this pro se civil rights case pursuant to 42 U.S.C. section 1983 on May 24, 2022.  Defendants are: (1) CMC-East Warden D. Samuels; and (2) CMC-East Correctional Officers Holcolm, J. Hernandez, S. Kearney, and Limas.  Plaintiff sues all Defendants in their individual capacities only.

Plaintiff alleges:

On May 3, 2022, Plaintiff was rehoused from Facility-A to Facility-B (Complaint, ECF Dkt. No. 1, p. 7, ¶ 1).[1]  On May 6, 2022, between 2:25 p.m. and 3:00 p.m., Plaintiff noticed "fumes" coming from the plumbing hatch of his cell and from behind the sink and toilet (id.).  The fumes tasted like "vaporized Cell Block 64" (id.).  The same phenomenon occurred on each of next three days, mostly at the beginning and at the end of the third watch shifts, i.e., between 2:00 p.m. and 11:30 p.m. (id.).  The "gassing" on May 9 at approximately 9:30-9:40 p.m. was the worst (id., ¶ 2).

The "gas" came out "fast and strong" (id., p. 8, ¶ 2).  Whatever it was, it was hazardous to humans (id.).  "Whoever was doing this (Plaintiff believes it was the guards), they waited until it was 'lock-up time' to do it, so the Plaintiff would not be able to go out of his cell to get away from it" (id.).  The "chemicals" completely engulfed Plaintiff's cell and entered Plaintiff's mouth and stomach, causing damage (id., ¶ 3).  Although the exposure was intense, it lasted only approximately twenty minutes (id.).

The next day, May 10, 2022, Plaintiff experienced severe abdominal pain (id.).  On May 11, 2022, Plaintiff noticed that he could not lean forward without suffering

---

[1]     Because the Complaint does not bear consecutive page numbers, the Court uses the ECF pagination.

severe pain, and he realized that he had holes in his
stomach (id.).

On May 12, 2022, Plaintiff noticed that a portion of
his stool was dark (id., ¶ 4). Plaintiff's stool was darker
on May 13, 2022 and completely dark on May 14, 2022 (id.).
Plaintiff submitted a medical request to see a doctor (id.).

"Medical" responded quickly to the request (id., p. 15
n.6). A nurse said Plaintiff was bleeding internally, so
lab tests were ordered (id.). However, Plaintiff was not
allowed to see the doctor (id.). When Plaintiff previously
had holes in his stomach in November or December of 2021,
Plaintiff had to wait thirty days to see a doctor, which was
after the holes had closed (id.). "That way, there would be
no need for procedures such as a CT scan, an [sic] no
recorded evidence of the holes in Plaintiff's medical
records [sic]" (id., pp. 15-16 n.6). The medical department
is concealing information in violation of 18 U.S.C. section
1512(c)(1) (id., p. 16 n.6).[2]

Also on May 12, 2022, Plaintiff was called to the
program office to be interviewed regarding a grievance

---

[2]    Section 1512 is the federal witness tampering statute.
Section 1512(c)(1) makes it unlawful to "corruptly . . .
(1) alter[], destroy[], mutilate[] or conceal[] a record,
document, or other object, or attempt[] to do so, with the intent
to impair the object's integrity or availability for use in an
official proceeding," or otherwise to "obstruct[], influence[],
or impede[] any official proceeding, or attempts to do so. . . ."

Plaintiff had filed (id., p. 17, n.11).  Correctional
Officer Dela Garza said he had to search Plaintiff (id.).
Dela Garza instructed Plaintiff to turn his head as Dela
Garza patted down the opposite side of Plaintiff's body
(id.).  Dela Garza was harassing Plaintiff because Plaintiff
was going to "talk to internal affairs" (id.).  "Plaintiff
believes the rest of the guards have resentment against
Plaintiff for this as well" (id.).

    On May 19, 2022, at approximately 8:00 a.m., the guard
on the tier, Defendant Holcolm, announced that "there was
mandatory yard due to inspection" (id., p. 9, ¶ 5).  The
inspection occurred at approximately 9:10 a.m., shortly
after Plaintiff left the building for his "medical ducat"
(id.).  Defendants Holcolm, Hernandez, Kearney and Limas
were "working the building" during the inspection (id.).
When Plaintiff returned to his cell at approximately 11:00
a.m., he found it "in good order," although there were signs
the cell had been searched (id.).

    In his cell, Plaintiff had an open box of instant
oatmeal containing three packets (id., ¶ 6).  At
approximately 3:00 p.m. on May 21, 2022, Plaintiff cooked
and ate the three packets of oatmeal (id.).  A few minutes
later, Plaintiff's mouth, stomach and inside of his nose
began to burn (id.).  The oatmeal had been poisoned during
the May 19 building inspection (id.).  "If the guards in the
building participated in the building inspection, there's

'no way' they don't know about the poisoning" (id.).
Plaintiff knows this because he observed an inspection on
May 12, 2022 during which Plaintiff saw guards going door-
to-door, in and out of cells (id., p. 16 n.8).  It would be
"unwise for Plaintiff not to assume that the other food on
his shelf (1 case of Ramen noodles) was not poisoned" (id.,
p. 17 n. 10).  The plastic on the wrapping of the noodles is
not as tight as it was prior to the inspection (id.).

On May 22, 2022, Plaintiff submitted a medical request
to see a doctor for the food poisoning (id., p. 9, ¶ 7).
Later that day, at approximately 2:30 p.m., guards saw
Plaintiff sitting at a table in the dayroom with a blank
inmate complaint, writing a rough draft "to this argument"
(id., pp. 9-10, ¶ 7).  "Plaintiff was trying to decide
whether to file an institutional complaint or go straight to
the Court" (id.).  At approximately 4:45 p.m., while
Plaintiff was in his cell, he noticed the same chemical
coming from the plumbing hatch that had burned holes in his
stomach on May 9, 2022 (id., p. 10, ¶ 7).  If the chemical
is strong enough to burn holes in Plaintiff's stomach, it is
strong enough to kill him (id.).  Plaintiff was able to
stuff wet toilet paper around the sink area and plumbing
hatch to provide "some protection from the chemical
exposure," and Plaintiff's open window prevents the chemical
from accumulating to potentially fatal levels (id., pp. 10,
¶ 7; 16, n.9).

///

Defendant Holcolm harbors animosity toward Plaintiff (id., p. 10, ¶ 8).  In 2018, Holcolm urinated on Plaintiff's hygiene products (id.).  After inspection, Plaintiff would return to his cell to find urine in his bottles of lotion and baby oil (id.).  Plaintiff wrote one or two letters to the Court concerning Holcolm's behavior in Wilkins v. Gastelo, CV 17-4322-VAP(E) or Wilkins v. California Dep't of Corrections and Rehabilitation, CV 18-9116-VAP(E) (id.).  Thereafter, Holcolm did not tamper directly with Plaintiff's hygiene products, but rather "did it indirectly by letting other inmates go into Plaintiff's cell" (id., pp. 10-11, ¶ 8).  During an inspection in 2018, Plaintiff remained in his cell due to a "medical lay-in" (id., p. 11, ¶ 8).  After Holcolm pulled the lever to open all the doors on the tier, three inmates who had volunteered to clean the building walked down the tier, focused on Plaintiff's cell (id.).  When they saw Plaintiff standing in his cell doorway watching them, the inmates immediately acted as if they were cleaning (id.).  On another day in 2018, after an inspection, Plaintiff confronted Holcolm about the tampering with Plaintiff's hygiene products (id.).  On that day, Holcolm rehoused Plaintiff to a different building (id.).  One of the porters who works on the tier in the building where Plaintiff is now housed told Plaintiff that Holcolm works that tier approximately once a month (id., pp., 16-17 n.10).

///

///

Plaintiff "does not know exactly which guard did or did not do the poisoning" (id., p. 11, ¶ 9).  Of the guards who worked the building and conducted the May 19, 2022 inspection, Holcolm was the one with a "higher motive to do it" (id.).  "The Plaintiff's Eighth Amendment rights were violated" (id.).

Defendant Samuels' subordinates "keep committing constitutional violations under color of law against Plaintiff (id., p. 12, ¶ 10).  Samuels refuses to train, supervise and control his subordinates (id., p. 12).  "They" violated Plaintiff's Eighth Amendment rights in Wilkins v. Lowe, CV 18-9159-VAP(E), Wilkins v. Correctional Officers, CV 21-3383-VAP(E), and Wilkins v. Samuels, CV 22-2434-VAP(E) (id.).

The Complaint contains two claims for relief: (1) a claim for alleged violation of the Eighth Amendment (Claim I); and (2) a supervisor liability claim against Defendant Samuels (Claim II). Plaintiff seeks compensatory, special, nominal and punitive damages, as well as unspecified injunctive relief.

Plaintiff attaches to the Complaint the following documents:

1.  A "Health Care Services Request Form," Form CDCR 7362, allegedly written by Plaintiff and bearing a date of May 14, 2022, in which Plaintiff complained of purported "fumes" which tasted like "Cell Block 64" allegedly entering his cell on May 4, 2022, which

1    supposedly caused Plaintiff to suffer holes in his stomach and black

2    stools;

3

4         2.   An "Inmate Priority Pass" bearing Plaintiff's name, an issue

5    date of May 17, 2022 and an appointment date of May 18, 2022; and

6

7         3.   A "Health Care Services Request Form," Form CDCR 7362,

8    allegedly written by Plaintiff and bearing a date of May 21, 2022,

9    alleging that Plaintiff was suffering severe stomach pain from eating

10   food that purportedly was poisoned during a building inspection, and

11   that Plaintiff allegedly needed to see a doctor for holes in

12   Plaintiff's stomach supposedly caused by "fumes" entering Plaintiff's

13   cell through the plumbing hatch.

14

15                                **DISCUSSION**

16

17        Under Rule 8(a) of the Federal Rules of Civil Procedure, a

18   complaint must contain a "short and plain statement of the claim

19   showing that the pleader is entitled to relief."  "Each allegation

20   must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).

21   Conclusory allegations are insufficient.  See Ashcroft v. Iqbal, 556

22   U.S. 662, 678, 686 (2009).  "Experience teaches that, unless cases are

23   pled clearly and precisely, issues are not joined, discovery is not

24   controlled, the trial court's docket becomes unmanageable, the

25   litigants suffer, and society loses confidence in the court's ability

26   to administer justice."  Bautista v. Los Angeles County, 216 F.3d 837,

27   841 (9th Cir. 2000) (citations and quotations omitted).

28   ///

1    Plaintiff's pleaded allegations do not comply with Rule 8.

2    Plaintiff's confused allegations that prison guards "poisoned"

3    Plaintiff by supposedly contaminating his food and wafting chemical

4    fumes into Plaintiff's cell border on the delusional.[3]  Plaintiff's

5    wholly speculative allegations concerning the purported responsibility

6    of any Defendant for any of the alleged wrongdoing are insufficient to

7    state a claim against anyone.  Indeed, Plaintiff admits he does not

8    know who "poisoned" Plaintiff.  Plaintiff speculates that Defendant

9    Holcolm is somehow responsible because, some four years ago, Holcolm

10   supposedly urinated on Plaintiff's hygiene items.  Plaintiff's

11   speculative and conclusory allegations are insufficient to state any

12   cognizable claim for relief.  See Ashcroft v. Iqbal, 556 U.S. at 678,

13   686 (plaintiff must allege more than an "unadorned,

14   the-defendant-unlawfully-harmed me accusation"); a pleading that

15

16         [3]    Plaintiff made similar allegations in the past, against
     different prison officials and during different time periods.
17   The Court takes judicial notice of the dockets and documents in
     Plaintiff's prior cases.  See Porter v. Ollison, 620 F.3d 952,
18   954-55 n.1 (9th Cir. 2010) (federal court may take judicial
     notice of court records).  In attempted filings in Wilkins v.
19   Lowe, CV 19-9159-VAP(E), Plaintiff alleged that prison officials
     were poisoning Plaintiff's food and sending chemical fumes into
20   his cell.  Id., Dkt. Nos. 50 (received August 27, 2020), 51
     (received September 11, 2020), 52 (received September 15, 2020),
21   58 (received December 11, 2020).  In Wilkins v. Correctional
     Officers, CV 21-3383-VAP(E), Plaintiff three times unsuccessfully
22   sought preliminary injunctive relief on the grounds that prison
     officials were poisoning Plaintiff's food and/or sending "pepper
23   spray" or chemical fumes into Plaintiff's cell (Dkt. Nos. 9, 29,
     50).  The District Court deemed Plaintiff's allegations to be
24   speculative and conjectural.  Id., Dkt. Nos. 10, 41, 52; see
     Wilkins v. Correctional Officers, 2022 WL 1164232, at *1 (C.D.
25   Cal. Mar. 15, 2022); Wilkins v. Correctional Officers, 2021 WL
     6104413, at *1 (C.D. Cal. Nov. 23, 2021), aff'd, 2022 WL 1153927
26   (9th Cir. Apr. 19, 2022); Wilkins v. Correctional Officers, 2021
     WL 4815022, at *2 (C.D. Cal. May 19, 2021).  The Ninth Circuit
27   dismissed Plaintiff's appeal from the first denial order for
     failure to prosecute, and affirmed the second denial order.  Id.,
28   Dkt. Nos. 16, 56.  Plaintiff's appeal from the third denial order
     remains pending.

"offers labels and conclusions or a formulaic recitation of the
elements of a cause of action will not do") (citations and quotations
omitted).  Plaintiff fails to allege what each Defendant did or did
not do to violate Plaintiff's rights.  To state a cognizable section
1983 claim, "[a] plaintiff must allege facts, not simply conclusions,
that show that an individual was personally involved in the
deprivation of his civil rights."  Barren v. Harrington, 152 F.3d
1193, 1194 (9th Cir. 1998), cert. denied, 525 U.S. 1154 (1999).  A
complaint is subject to dismissal if one cannot determine from the
complaint who is being sued and for what relief.  McHenry v. Renne, 84
F.3d 1172, 1178 (9th Cir. 1996); see also Fagbohungbe v. Caltrans,
2014 WL 644008, at *3 n.4 (N.D. Cal. Feb. 19, 2014) ("The general
allegation regarding 'defendants' is . . . insufficient on its face
because it does not identify which specific defendants . . .");
Chevalier v. Ray and Joan Kroc Corps. Cmty. Ctr., 2012 WL 2088819, at
*2 (N.D. Cal. June 8, 2012) (complaint that failed to "identify which
wrongs were committed by which Defendant" insufficient).

        As the Court previously has advised Plaintiff,[4] Plaintiff may not
sue Warden Samuels or any other supervisor pursuant to 42 U.S.C.
section 1983 on a theory that the supervisor is liable for the acts of
his or her subordinates.  See Polk County v. Dodson, 454 U.S. 312, 325
(1981).  A supervisor "is only liable for his or her own misconduct,"
and is not "accountable for the misdeeds of [his or her] agents."
Ashcroft v. Iqbal, 556 U.S. at 667.  Mere knowledge of a subordinate's

---

        [4]    See "Order Dismissing Complaint With Leave to Amend"
filed November 4, 2019 in Wilkins v. Lowe, CV 19-9159-VAP(E);
"Order Re Motion to Dismiss First Amended Complaint" filed
April 21, 2020 in Wilkins v. Lowe, CV 19-9159-VAP(E).

1  alleged misconduct is insufficient.  <u>Id.</u>  A supervisor may be held

2  liable in his or her individual capacity "for [his or her] own

3  culpable action or inaction in the training, supervision or control of

4  [his or her] subordinates."  <u>Watkins v. City of Oakland, Cal.</u>, 145

5  F.3d 1087, 1093 (9th Cir. 1998) (citation and internal quotations

6  omitted).  To state a cognizable section 1983 claim, "[a] plaintiff

7  must allege facts, not simply conclusions, that show that an

8  individual was personally involved in the deprivation of his civil

9  rights."  <u>Barren v. Harrington</u>, 152 F.3d at 1194.  The Complaint

10  alleges no facts from which Warden Samuel's liability plausibly might

11  be inferred.

12

13      To the extent Plaintiff alleges that any Defendant failed to

14  provide adequate medical care for Plaintiff, any such claim is

15  insufficient.  As the Court previously has advised Plaintiff,[5] prison

16  officials can violate the constitution if they are "deliberately

17  indifferent" to an inmate's serious medical needs.  <u>See</u> <u>Farmer v.</u>

18  <u>Brennan</u>, 511 U.S. 825, 834 (1994); <u>Estelle v. Gamble</u>, 429 U.S. 97, 104

19  (1976).  To be liable for "deliberate indifference," a prison official

20  must "both be aware of facts from which the inference could be drawn

21  that a substantial risk of serious harm exists, and he must also draw

22  the inference."  <u>Farmer v. Brennan</u>, 511 U.S. at 837.  Allegations of

23  negligence do not suffice.  <u>Estelle v. Gamble</u>, 429 U.S. at 105-06;

24  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1131 (9th Cir. 2000).  Thus, inadequate

25

26  _____

27      [5]   <u>See</u> "Order Dismissing Complaint With Leave to
    Amend" filed April 1, 2019 in <u>Wilkins v. State of California</u>, CV
    19-2048-VAP(E); "Report and Recommendation of United States

28  Magistrate Judge" file March 5, 2020 in <u>Wilkins v. State of</u>
    <u>California</u>, CV 20-818-VAP(E).

treatment due to accident, mistake, inadvertence, or even gross negligence does not amount to a constitutional violation. <u>Estelle v. Gamble</u>, 429 U.S. at 105-06; <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." <u>Farmer v. Brennan</u>, 511 U.S. at 838.  The Complaint alleges no facts showing that any Defendant knew of, and subjectively disregarded, any alleged serious medical need of Plaintiff.

To the extent Plaintiff alleges that Defendant Holcolm or any Defendant retaliated against Plaintiff, the Complaint is insufficient. As the Court previously advised Plaintiff,[6] prison officials may not retaliate against inmates for the inmates' exercise of their First Amendment rights.  See <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  <u>Id.</u> at 567-68 (citations and footnote omitted). Plaintiff must allege "a chronology of events from which retaliation can be inferred. . . ."  <u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th

---

[6]    See "Order Dismissing Complaint With Leave to Amend" filed April 1, 2019 in <u>Wilkins v. State of Calif., et al.</u>, CV 19-2048-VAP(E); "Report and Recommendation of United States Magistrate Judge," filed March 5, 2020 in <u>Wilkins v. State of California</u>, CV 20-818-VAP(E), <u>adopted</u>, April 17, 2020.

Cir. 2012).  Plaintiff has failed to allege facts from which the elements of a retaliation claim against Holcolm or any other Defendant plausibly might be inferred.

To the extent Plaintiff purports to allege a claim based on an alleged violation of 18 U.S.C. section 1512(c)(1), any such claim is insufficient as a matter of law.  There is no private cause of action for an alleged violation of section 1512.  See Rowland v. Prudential Fin., Inc., 362 Fed. App'x 596, 596-97 (9th Cir.), cert. denied, 562 U.S. 962 (2010); Albanese v. City of Anaheim, 2020 WL 6265131, at *6 (C.D. Cal. Sept. 9, 2020), adopted, 2020 WL 6263184 (C.D. Cal. Oct. 22, 2020); Shahin v. Darling, 606 F. Supp. 2d 525, 538 (D. Del.), aff'd, 350 Fed. App'x 605 (3d Cir. 2009) (citing cases).

**ORDER**

The Complaint is dismissed with leave to amend.  If Plaintiff still wishes to pursue this action, he is granted thirty (30) days from the date of this Order within which to file a First Amended Complaint.  Any First Amended Complaint shall be complete in itself and shall not refer in any manner to the original Complaint. Plaintiff may not add Defendants without leave of court.  See Fed. R. Civ. P. 21.  Failure timely to file a First Amended Complaint in conformity with this Order may result in the dismissal of the action. See Pagtalunan v. Galaza, 291 F.3d 639, 642-43 (9th Cir. 2002), cert. denied, 538 U.S. 909 (2003) (court may dismiss action for failure to follow court order); Simon v. Value Behavioral Health, Inc., 208 F.3d 1073, 1084 (9th Cir.), amended, 234 F.3d 428 (9th Cir. 2000), cert.

1  denied, 531 U.S. 1104 (2001), overruled on other grounds, Odom v.
2  Microsoft Corp., 486 F.3d 541 (9th Cir.), cert. denied, 552 U.S. 985
3  (2007) (affirming dismissal without leave to amend where plaintiff
4  failed to correct deficiencies in complaint, where court had afforded
5  plaintiff opportunities to do so, and where court had given plaintiff
6  notice of the substantive problems with his claims); Plumeau v. School
7  District #40, County of Yamhill, 130 F.3d 432, 439 (9th Cir. 1997)
8  (denial of leave to amend appropriate where further amendment would be
9  futile).
10
11       DATED: _____June 17_____, 2022.
12
13                              _____
14                              STEPHEN V. WILSON
                                UNITED STATES DISTRICT JUDGE
15
16
17  Presented this 15th day of
18  June, 2022, by:
19
20
          _____/S/_____
21         CHARLES F. EICK
    UNITED STATES MAGISTRATE JUDGE
22
23
24
25
26
27
28